UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY HEAD,

      Petitioner,

v.

J. CHRISTIANSEN, *Warden*,

      Respondent.

Case No. 18-12416
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING
AMENDED PETITION FOR WRIT OF HABEAS CORPUS [8]**

---

Mark Anthony Head was convicted of attempted second-degree home invasion and conspiracy to commit second-degree home invasion for kicking down the door of a stranger's home in Harrison Township, Michigan. Head entered the home for a short period of time before exiting without taking anything. He was accompanied by his then-girlfriend.

After appealing his conviction—and returning to state court a second time to seek relief from judgment—Head filed an amended petition for a writ of habeas corpus in this Court. For the reasons that follow, the Court denies the writ.

**I.**

The Court primarily relies on the facts as recited by the Michigan Court of Appeals on Head's direct appeal of his conviction. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)); *Thompson v. Keohane*, 516 U.S. 99, 102 (1995) ("The statute governing federal habeas corpus proceedings, 28 U.S.C.

§ 2254, directs that, ordinarily, state-court fact findings 'shall be presumed to be correct.'").

Head and his then-girlfriend, Heather Marie Glidden, were driving his cousin's truck in Harrison Township, Michigan, when they pulled into a driveaway. *See People v. Glidden*, No. 329086, 2017 WL 1010277, at *1 (Mich. Ct. App. Mar. 14, 2017). Video footage from the homeowner's outdoor security cameras shows that, "[w]hile Head initially waited in the truck, Glidden approached the front door of the house and spent a few minutes ringing the doorbell, knocking on the door, looking in a nearby window, and knocking on the window. After a few minutes, Glidden returned to the truck, and Head approached the house. He devoted the next few minutes to knocking on the door, attempting to tamper with a security camera, walking around the exterior of the house, and peering in windows." *Id.*

"Eventually, [Head] returned to the front door, where he proceeded to kick the front door 17 times until the door gave way and he gained entry." *Id.* The homeowner testified that the house is equipped with a "very loud internal alarm that sound[s] after 30 seconds if not de[activated] on entry." *Id.* "Head entered the home briefly, but then quickly exited when the alarm sounded. Defendants then drove away in their truck. No property was taken from the house." *Id.*

The jury ultimately convicted Head of attempted home invasion in the second degree and conspiracy to commit second-degree home invasion. (ECF No. 16-14, PageID.962.) Head was sentenced to concurrently serve one to five years for the

attempted home-invasion conviction and nine to fifteen years for the conspiracy conviction. (ECF No. 16-15, PageID.988.)

On direct appeal, Head argued that (1) his conviction must be vacated because there was no evidence of intent to commit a larceny and (2) his defense counsel was ineffective for failing to request a jury instruction on the lesser-included charge of breaking and entering without permission. The Michigan Court of Appeals rejected these arguments. *See Glidden*, 2017 WL 1010277, at *1. Head raised the same two claims and added a third ineffective-assistance-of-appellate counsel claim in an application for leave to appeal in the Michigan Supreme Court. On September 12, 2017, the Michigan Supreme Court denied leave to appeal. *See People v. Head*, 901 N.W.2d 380 (Mich. 2017).

Head then turned to this Court, raising the three claims that he presented to the Michigan Supreme Court. (ECF No. 1.) He simultaneously filed a motion for a stay and abeyance of his habeas petition, indicating that he wanted to exhaust additional claims in state court. (ECF No. 3.) The Court granted his request and administratively closed the case. (ECF No. 6.)

In 2020, Head returned to federal court and filed an amended petition raising claims of insufficient evidence, ineffective assistance of trial and appellate counsel, and violations of the Due Process Clause and the Confrontation Clause. (ECF No. 8.) The Warden opposes the petition. (ECF No. 15.)

## II.

Before the Court considers the substance of Head's petition, a word on the standard.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). So to obtain relief in federal court, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. And a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), with review being "limited to the record that was before the state court." *Cullen*, 563 U.S. at 181. But if the state courts did not adjudicate a claim "on the merits," "AEDPA . . . does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

So before proceeding, the Court must determine if the state courts adjudicated Head's claims on the merits.

Head's sufficiency-of-the-evidence claim and ineffective-assistance-of-trial-counsel claim based on failure to ask for a lesser-offense instruction were raised in his direct appeal, and the Michigan Court of Appeals issued a decision on the merits. *See generally Glidden*, 2017 WL 1010277. So the Court must defer to that decision.

Head's ineffective-assistance-of-counsel claim based on the preliminary examination, his claim that he was not given proper notice of his habitual-offender enhancement, and his Confrontation Clause claims were raised in his motion for relief from judgment after his direct appeal and adjudicated on the merits by the trial court. (ECF No. 16-16, PageID.994 ("Each of the grounds argued by defendant in his brief and motion are either factually or legally in error—or both.").) But when addressing whether Head was properly served with the habitual-offender enhancement, the trial court additionally noted "the defendant waived his argument by not raising it on direct appeal." (ECF No. 16-16, PageID.996.) The Michigan Court of Appeals later denied leave to appeal, stating "defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." (*Id.* at PageID.1087.) And the Michigan Supreme Court denied leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." (ECF No. 16-20, PageID.1685.) That rule states in part, "The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion . . . alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter,

unless the defendant demonstrates . . . good cause . . . and . . . actual prejudice[.]" Mich. Ct. R. 6.508(D)(3)(a)–(b).

The Court finds that these claims were decided on the merits. Though the Michigan Supreme Court referenced Michigan Court Rule 6.508(D), the Sixth Circuit has found that such summary orders "can refer to the petitioner's failure to establish entitlement to relief either on the merits or procedurally[.]" *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc). And "looking to the last reasoned state court opinion," the trial court only mentioned waiver as to the habitual-offender claim. *See Strong v. Nagy*, 825 F. App'x 239, 242 (6th Cir. 2020). In doing so, it did not cite Michigan Court Rule 6.508 and did not purport to decide the issue on that basis. And it provided substantial reasoning on the merits of that claim.

So in considering Head's claims as to sufficiency-of-the-evidence, ineffective-assistance-of-trial-counsel, issues with service of the habitual-offender enhancement, and the Confrontation Clause, the Court will focus on whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law[.]" *See* 28 U.S.C. § 2254. And because the Michigan Supreme Court did not provide reasons for its holding on direct appeal or on the motion for relief from judgment, the Court will "look through the unexplained decision" to the Michigan Court of Appeals' and Michigan trial court's decisions which "provide a relevant rationale[.]" *See Wilson*, 138 S. Ct. at 1192.

But as no state court decided Head's ineffective-assistance-of-appellate-counsel claim on the merits, the Court will review that claim *de novo*. *See Bies*, 775 F.3d at 395.

## III.

The Court addresses each of Head's five claims in turn.

### A. Sufficiency of the Evidence

Head argues that there was insufficient evidence of his intent to commit larceny. Intent to commit larceny is an element of second-degree home invasion. *See People v. Dunigan*, 831 N.W.2d 243, 247 (Mich. Ct. App. 2013); Mich Comp. Laws § 750.110a(3). "The specific intent necessary to commit larceny is the intent to steal another person's property." *People v. Cain*, 605 N.W.2d 28, 43 (Mich. Ct. App. 1999). Importantly, "[i]ntent to commit larceny cannot be presumed solely from proof of the breaking and entering." *People v. Uhl*, 425 N.W.2d 519, 521 ( Mich. Ct. App. 1988). "However, intent may reasonably be inferred from the nature, time and place of defendant's acts before and during the breaking and entering." *Id*.

Head's claim that there was insufficient evidence of his intent to commit larceny falls within the scope of the Due Process clause. The Supreme Court has held "that the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When a petitioner, like Head, challenges the sufficiency of the evidence underlying his conviction, the Court must view the trial

testimony and exhibits "in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (internal quotations omitted).

On habeas review, Head faces a steeper hurdle. "[T]he law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [appellate court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Id.* (citations omitted). In other words, the Michigan Court of Appeals' decision on this claim must be contrary to or an unreasonable application of *Jackson v. Virginia*.

The Michigan Court of Appeals found that there was a sufficient basis for the jury to conclude that Head intended to commit larceny. In particular, it found that "defendants went to a stranger's house at a time when the house was unoccupied"; "[t]hey drove a borrowed pick-up truck in which it would be possible to transport stolen goods"; "they parked their vehicle facing the street, as though poised for easy exit"; "both defendants took turns looking in windows and repeatedly knocking on the door, from which it can be inferred that they were verifying that the home was in fact

unoccupied"; and, while Head kicked down the door, his co-defendant "sat in the driver's seat of the truck, positioned for a quick exit from the property." *Glidden*, 2017 WL 1010277, at *1.

The Michigan Court of Appeals did not unreasonably apply federal law in concluding that these facts showed that Head intended to commit larceny. For one, Head does not attack many of the factual predicates for the Court of Appeals' decision. Instead, he spends a significant time discussing alternate theories for this evidence. Indeed, his co-defendant testified to many of these other theories. (ECF No. 16-14, PageID.866 (co-defendant testifying that she saw a boat trailer in the yard by the house in question that she wished to purchase, leading her to walk up to the home where she heard "voices . . . it sounded like somebody was yelling for help"); *cf. id.* at PageID.809 (homeowner testifying that she had not placed any ads in the paper indicating she was selling something at the home); *id.* at PageID.822 (homeowner testifying house next door had a boat trailer but it was not for sale).)

But this Court may not reweigh the competing evidence offered at trial. *See Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011). It may only determine whether the Michigan Court of Appeals acted unreasonably in determining that there was sufficient evidence of intent. And based on the uncontested facts supporting the state court's decision—that Head verified the house was unoccupied by looking through windows, that he drove a borrowed pick-up truck to the house, and that he and his co-defendant took turns waiting in the truck while the other checked the home—the

jury had a sufficient basis to find that Head intended to steal another's property at the time he entered the home.

Head emphasizes that the prosecution's theory does not add up because he had thirty seconds inside the house before the alarm supposedly went off (more on that later), yet he did not take anything even though a laptop and a television were within reach. (ECF No. 8, PageID.211 ("[O]ne must surmise that an individual intent upon larceny would grab these highly valuable and easily fungible electronics before exiting.").)

But this argument misses the mark. For one, someone can have an intent to commit larceny but never actually steal anything. Indeed, those are two distinct ways to commit second-degree home invasion. *See* Mich. Comp. Laws § 750.110a(3) (providing that both "[a] person who breaks and enters a dwelling with intent to commit a felony, larceny or assault in the dwelling" and "a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault" are "guilty of home invasion in the second degree"). So one may intend to steal items—but not be able to accomplish this for various reasons—and still violate the statute. For example, if an individual was surprised or interrupted by an alarm or a resident upon entering a home, they may bolt without taking anything, including items that, in hindsight, appear easy to move and within reach. In other words, an individual's acts within 30 seconds of entering a home or their panicked response to an alarm does not preclude finding that the individual intended to steal things when

entering the home. Or perhaps the individual was looking for something in particular, which is why they did not act immediately. Either way, the Court disagrees that there was insufficient evidence of intent merely because Head did not take anything within moments of entering the home.

And two, the jury was well aware that Head and his co-defendant did not take anything and that several items were apparently within reach in the front room of the house. (*See, e.g.*, ECF No. 16-14, PageID.827 (homeowner testifying that she did not notice that anything had been taken from the home).) So it was able to consider that fact when determining whether Head had the requisite intent. Apparently—and perhaps for the reasons noted by the Michigan Court of Appeals—it still found he possessed such an intent. This does not result in a Due Process violation.

Head also focuses on the alarm, which he describes as "[c]entral to the prosecution's theory of intent[.]" (ECF No. 8, PageID.212.) It appears that the prosecution's theory was that Head left the house without taking anything because he was surprised by an alarm. But according to Head, if there was insufficient evidence that the alarm actually went off, then the prosecution's theory falls apart. In other words, if the alarm did not go off, he would have had the opportunity to steal—and the fact that he did not shows he had other intentions.

Head contends that there was no concrete evidence that the alarm went off. But an officer with the Macomb County Sheriff's Department testified that the department was "dispatched [to the residence] for an alarm—residential alarm sensory motion." (ECF No. 16-14, PageID.834.) And the homeowner stated that the

11

alarm company called her and sent the police to her house, which presumably was a result of the alarm going off. (*Id.* at PageID.830.) So there was plenty of evidence for a jury to infer that the alarm went off while Head was in the home.

In conclusion, the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in finding that there was sufficient evidence for a jury to find Head intended to commit larceny when entering a stranger's home. So the Court will not grant habeas relief on this issue.

## B. Ineffective Assistance of Trial Counsel

Head also argues that his trial counsel was ineffective for two reasons: he failed to ask for a lesser-included-offense jury instruction and he did not appear at Head's preliminary examination.

An ineffective-assistance-of-counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that the deficiency resulted in prejudice to the defendant. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance is judged under a "highly deferential" reasonableness standard. *Id.* at 688–89. And prejudice occurs when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. Simply put, the *Strickland* standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013)).

And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). Thus, "the question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

Start with Head's claim that trial counsel was deficient in not requesting jury instructions on a lesser-included offense. The Michigan Court of Appeals found that though Head "would have been entitled to a lesser-included instruction" of breaking and entering without permission—a misdemeanor with no intent element—he had not "overcome the presumption" that his attorney's decision not to request such an instruction was a matter of trial strategy to "force the jury into an all or nothing decision." *Glidden*, 2017 WL 1010277, at *6.

The Court finds that this decision was not unreasonable under *Strickland*. As stated, the Court accords deference to trial counsel's decisions and may only analyze whether there was "any reasonable argument" for counsel's choice. *Harrington*, 562 U.S. at 105. Here, the Court agrees with the state court that taking an all-or-nothing approach is a reasonable basis for trial counsel to not ask for a breaking-and-entering instruction. And defense counsel's closing remarks appear to corroborate such a

strategy. As Head himself notes, during closing argument, defense counsel stated, "I do believe there were two crimes committed. The problem is that those two crimes have nothing to do with your deliberations. Those two crimes are the kicking of the door, which we would commonly refer to as malicious destruction of property and that's not for you to decide. And the other crime would be going into the house, which is trespassing, which is also not to be decided." (ECF No. 16-14, PageID.908–909.) In other words, defense counsel argued to the jury that whether Head was guilty of other crimes was not at issue—all that was at issue was whether he was guilty of second-degree home invasion, which required intent. Such an argument would be undermined if the jury was also required to decide whether Head committed a lesser offense. And it was not unreasonable for trial counsel to place intent squarely at issue where there was no direct evidence of intent and nothing was taken from the home. The Court acknowledges that an "all-or-nothing" strategy carries some risk, and in hindsight, that risk can appear to be unjustified. But "it cannot be the case that every risky trial strategy, upon failing, amounts to constitutionally ineffective counsel." *Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017). Given the deference this Court owes to the Michigan Court of Appeals and trial counsel, it cannot be said that such a strategy was "deficient" under *Strickland* nor that the Court of Appeals acted contrary to federal law in so concluding. *See id.* ("Because there was sufficient evidence in the record to support trial counsel's decision to pursue an 'all-or-nothing' defense, trial counsel's performance did not fall below the bar of professionally competent assistance."). So this claim will be denied.

Head's second issue with counsel's performance involves counsel failing to appear for Head's preliminary examination. Head posits his claim under the Supreme Court's decision in *U.S. v. Cronic*, 466 U.S. 648, 659 (1984). There, the Court discussed how "the complete denial of counsel" at a "critical stage" of a defendant's criminal proceedings would be constitutional error, and prejudice may be presumed if this occurs. *Id.*

However, as the Michigan trial court stated in its evaluation of this claim, Head was not completely denied counsel at his preliminary examination. His counsel appeared for the initial preliminary examination on March 4, 2015 (ECF No. 16-8, PageID.545), but was unavailable for the second day of the examination, so substitute counsel appeared for Head (ECF No. 16-9, PageID.566). Contrary to Head's argument, substitute counsel cross-examined the officer in charge and the homeowner at the preliminary examination and even moved to dismiss the charges based on the prosecution's failure to adequately present all elements of second-degree home invasion. (ECF No. 16-9, PageID.567–568, 577, 580–581, 584.) Head identifies no other deficiency as to substitute counsel's performance during the preliminary examination. As the trial court stated, "[s]ubstitute counsel was well qualified to conduct an examination." (ECF No. 16-16, PageID.996.) So Head was afforded counsel at his preliminary examination and has not shown, nor argued, that this counsel was deficient in any way.

Perhaps making a different claim, Head argues that the trial court "forced" him to proceed with substitute counsel. (ECF No. 8, PageID.224.) The record shows a

fuller story. When the judge asked Head whether it was okay for substitute counsel to appear, Head initially responded "I was wanting my attorney to be here." (ECF No. 16-9, PageID.566.) The judge again asked, "Is that okay with you, sir, if it's not okay with you then we'll adjourn this and we will charge some costs to the absent people." (*Id.*) Head responds, "Uh – it's okay." (*Id.*) The judge then says, "You know, it's up to you. I don't want to force you into something that you don't want to do. If you're not happy with this attorney, then we'll set it over another time." (*Id.* at PageID.566– 567.) Head again responds, "Well, I would like to have my attorney." (*Id.* at PageID.567.) The judge continues, "Okay, if we're going to adjourn, we're gonna assess $200 cost against Mr. Head's absent attorney." (*Id.*) Mr. Head interrupts, "Okay – I can go with this attorney, sir." (*Id.*) Head argues that this record indicates that he "was made to believe that $200 assessed his absent attorney would be passed on to him as he was paying his attorney and that he was uselessly delaying the court proceedings." (ECF No. 8, PageID.225.)

The record is not a pinnacle of clarity. But it is clear that the judge asked Head several times whether he wanted to proceed with substitute counsel. And the judge also stated that the costs were to be assessed to "the absent people" and Head's "absent attorney." The record does not show that the judge indicated to Head that such costs would be passed on to him or that he was "uselessly delaying" proceedings. Indeed, the judge told Head he did *not* want to "force" him into something he did not

want to do and that the decision was up to him.[1] So the Court does not agree that the trial court improperly coerced Head to move forward with substitute counsel.

And to the extent that Head is arguing that he was deprived his right to counsel *of choice*—an argument he did not clearly make to the state courts—the Court denies the claim for similar reasons. Namely, that Head has not shown the trial court prevented him from proceeding with his counsel of choice. *See Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. . . . [O]nly an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel."). Thus, Head's ineffective-assistance claim as to his counsel not appearing at the second day of his preliminary examination is also denied.

## C. Habitual-Offender Notice

Head next argues that the prosecution failed to provide him with advance notice of his fourth-offense habitual-offender enhancement.

---

[1] Head provides an affidavit stating that he was told a number of things off-the-record by the judge and substitute counsel that led him to believe he could not freely choose to not move forward with substitute counsel. This affidavit is dated February 19, 2020, and thus, could not have been considered by the state trial court in its review of this claim. (*See* ECF No. 8, PageID.267; ECF No. 16-16, PageID.998 (trial court order on motion for relief from judgment dated January 2, 2019).) As such, the Court will not consider it on habeas review. *See Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

The Warden argues that this claim was procedurally defaulted. (ECF No. 15, PageID.437.) The Court finds that the merits of this claim are more "easily resolvable" than the procedural issues. Thus, the Court will resolve the issue on the merits. *See Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) ("[W]e may sometimes reach the merits of a petitioner's claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated.").

Head raised this argument in his motion for relief from judgment, which the trial court rejected in part because "the argument [was] shown to be false on the face of the records[.]" (ECF No. 16-16, PageID.994.) The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.

For starters, Head's claim that he received inadequate notice of the habitual offender enhancement under Michigan law is not cognizable upon federal habeas review. *See, e.g.*, *Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1240–41 (E.D. Mich. 1993); *see also Threat v. Harry*, No. 2:17-CV-12465, 2018 WL 2431707, *7 (E.D. Mich. May 30, 2018) (same); *MacArthur v. Curtin*, No. 13-CV-11307, 2014 WL 3767835, *15–16 (E.D. Mich. July 31, 2014) (collecting cases). It is well-settled that habeas relief may not be based upon a perceived violation of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 72 (1991).

And even considering this claim further, the record does not support Head's argument that he was "not aware of the Prosecution's intent to seek a Habitual Offender 4th enhancement to his sentence." (*See* ECF No. 8, PageID.232.) While due process requires that a defendant be given reasonable notice and an opportunity to

18

be heard on such an enhancement, *see Oyler v. Boles*, 368 U.S. 448, 452 (1962), the state court docket shows that the prosecutor filed a habitual-offender notice with the trial court on April 2, 2015, together with the information and list of known witnesses. (ECF No. 16-1, PageID.469.) And Head waived a reading of the charges during his arraignment. (*Id.*)  Further, defense counsel acknowledged at sentencing that "we already knew all along that the habitual fourth, Your Honor, I understand it is a hundred and fourteen months[.]" (ECF No. 16-15, PageID.986.) So it does not appear that the habitual-offender enhancement was sprung on Head or his counsel.

Moreover, Head had the opportunity to challenge his sentencing enhancement during the proceedings before the state trial court. Head's habitual-offender status was discussed in some detail during sentencing, and his attorney did not dispute the application of the enhancement. (*See* ECF No. 16-15, PageID.987 ("I don't have an, I can't quarrel with the guidelines. They're scored accurately.").) So it appears Head was afforded what due process requires—reasonable notice and an opportunity to be heard. *See Oyles*, 368 U.S. at 452; *see also Brown v. Nagy*, No. 19-1847, 2019 WL 7761722, *8 (6th Cir. Dec. 16, 2019) (denying a certificate of appealability on similar habitual-offender-notice claims). So the Court finds that Head has not shown his due-process rights were violated in connection with the habitual-offender enhancement.

### D. Confrontation Clause

Head also argues that the trial court violated his Sixth Amendment right to confrontation when it allowed the homeowner to testify, "[t]he alarm company called me and said there had been a break in." (ECF No. 16-14, PageID.808.) Head argues

he was denied an opportunity to cross-examine a spokesperson from the alarm company on this statement. (ECF No. 8, PageID.236.)

In *Crawford v. Washington*, the Supreme Court held that out-of-court statements that are "testimonial" in nature may not be admitted at trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. 541 U.S. 36, 68 (2004). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006).

For a few reasons, Head's Confrontation Clause claim fails. For one, this statement was not used for the truth of the matter asserted. The transcript shows that this testimony was elicited to show that the homeowner was at Cedar Point when she was notified by the alarm company that there had been a break in, and upon learning this, she was able to review the video footage on her phone. (ECF No. 16-14, PageID.808.) So it appears that this testimony was used for its effect on the listener— the homeowner—and her subsequent actions of checking the video (a key piece of evidence in this case). As such, the Confrontation Clause "has no application" because the statement was not "offered to prove the truth of the matter asserted." *See Williams v. Illinois*, 567 U.S. 50, 57–58 (2012).

Further, this statement is not testimonial in nature. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004) (defining a testimonial statement as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact"

and finding that it includes "at a minimum . . . prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations"). The alert from the alarm company was clearly sent during "an ongoing emergency" and was meant to assist the homeowner in addressing that emergency. *See Davis v. Washington*, 547 U.S. 813, 822 (2006) ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."). And of course, unlike *Davis*, these statements were not made in the context of a police interrogation, making it even less likely that the "primary purpose [was] to prove past events that are potentially relevant to a later criminal trial." *See Ohio v. Clark*, 576 U.S. 237, 244 (2015).

Moreover, even if the Confrontation Clause was violated, the violation was harmless. *See Delaware v. Van Arsdall*, 475 U.S. 463, 684 (1986). To determine whether a Confrontation Clause violation is harmless, a court considers: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009) (citing *Van Arsdall*, 475 U.S. at 684).

The homeowner's statement about the alarm had little impact on the overall outcome of the case. For one, Head acknowledges that he "admitted" to the first two

21

elements of second-degree home invasion: breaking and entering. (ECF No. 8, PageID.206); *see also* Mich. Comp. Laws § 750.110a(3). So it is not clear how a statement that "there had been a break in" changes the calculus as to any fact otherwise at issue. Moreover, the prosecution had a strong case against Head even without this statement—namely, video surveillance footage of Head gaining forceful entry into the home. (ECF No. 16-14, PageID.816–817.) And to the extent this testimony proves anything about whether the alarm went off, it would be cumulative to the officer's testimony that he was dispatched to the house by the alarm company and the homeowner's testimony that the alarm goes off 30 seconds after the door opens based on her personal experience. (ECF No. 16-14, PageID.806, 834.) Thus, even if the admission of this testimony violated the Confrontation Clause, Head is not entitled to relief because the admission could not have had a substantial and injurious effect on the jury's verdict. So this claim will be denied.

Accordingly, Head's related ineffective-assistance-of-counsel claim also fails because the admission of this evidence was harmless error. *See Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009) ("The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review."); *Bell v. Hurley*, 97 F. App'x. 11, 17 (6th Cir. 2004). So habeas relief on the basis of the Confrontation Clause will be denied.

### E. Ineffective Assistance of Appellate Counsel

Finally, Head argues that his counsel on direct appeal was ineffective for failing to move for a new trial or a *Ginther* evidentiary hearing in the trial court to

further investigate trial counsel's ineffectiveness. (ECF No. 8, PageID.226.) It appears that this argument stems from the Michigan Court of Appeals' decision on direct review, which stated, "Head did not file a motion for a new trial or a *Ginther* hearing, meaning that he failed to preserve his ineffective assistance of counsel claim." *Glidden*, 2017 WL 1010277, at *3.

Before turning to the merits, the Court addresses the Warden's procedural-default argument based on Head's lack of exhaustion in the same way it did previously. The merits of this claim are straightforward and simpler to address than the procedural default, and thus, the Court will address the merits first. *See Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) ("[W]e may sometimes reach the merits of a petitioner's claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated.").

It is unclear whether appellate counsel or trial counsel is to blame for the failure to file for a new trial or a *Ginther* hearing. The Michigan Court of Appeals clarified that unlike Head, his co-defendant did file a "timely motion for a new trial and a *Ginther* hearing in the lower court, raising her arguments related to counsel's general distractedness as well as the claim that he performed unreasonably with respect to moving for a directed verdict." *Glidden*, 2017 WL 1010277, at *3. Whether appellate counsel or Glidden herself made such a motion is unclear.

Regardless, even if appellate counsel was involved in the case at the time such a motion should be filed with the lower court, Head still has not shown that such an error was prejudicial. Appellate counsel did file a motion with the Michigan Court of

Appeals to remand the case to the trial court so that counsel could move for a new trial and an evidentiary hearing on defense counsel's alleged ineffectiveness. (ECF No. 16-18, PageID.1366.) The Michigan Court of Appeals denied the motion on the basis that further factual development of the record was unnecessary. (*Id.* at PageID.1364.) So it appears that appellate counsel both attempted to correct any prior error in failing to move in the trial court and that, even if such a motion had been filed with the lower court, it may have been denied for similar reasons as the Court of Appeals provided. Thus, Head cannot show deficient performance or that but for the error, the outcome would have been different. *Strickland*, 466 U.S. at 687–89.

Further, the motion for a new trial or a *Ginther* hearing would be in furtherance of Head's claim that his trial counsel was ineffective for failing to request a lesser-included offense instruction. *Glidden*, 2017 WL 1010277, at *3 ("Head argues only that his trial counsel was ineffective for failing to request a jury instruction on a lesser included offense."). As this Court has already found, Head could not show that trial counsel's actions in this regard were deficient within the meaning of *Strickland*. Thus, any failure of appellate counsel to move in the lower court regarding that claim would not have affected the outcome of the proceedings because the claim was meritless. *See Kelly*, 846 F.3d at 831.

So the Court will not grant relief on Head's ineffective-assistance-of-appellate-counsel claim either.

**IV.**

For the foregoing reasons, the Court DENIES Head's petition for a writ of habeas corpus. A separate order will issue on a certificate of appealability and proceeding in forma pauperis on appeal.

SO ORDERED.

Dated: September 5, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE